JOHN E. REED and ELIZABETH G. REED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT
Reed v. Commissioner
Docket No. 3662-79.
United States Tax Court
T.C. Memo 1982-734; 1982 Tax Ct. Memo LEXIS 14; 45 T.C.M. (CCH) 398; T.C.M. (RIA) 82734; December 23, 1982; Reversed December 5, 1983 *14 John C. Klotsche and John M. Peterson, Jr., for the petitioners. Anita N. Gottlieb, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $71,412.68 in petitioners' 1973 Federal income tax. The sole issue for our determination is whether capital gain from the sale of petitioners' stock was realized and recognized in 1973 or 1974. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. The petitioners, John E. and Elizabeth G. Reed, resided in Westfield, Massachusetts when the petition herein was filed. [1]
Petitioner was a shareholder in Reed Electromech Corporation (Electromech) since 1963. On October 16, 1973, the outstanding stock of Electromech was owned as follows: Shareholder
Number of Shares Owned
Joseph M. Cvengros
105
John E. Reed
80
John E. Reed, Trustee
20
Elizabeth C. Reed
20
Stewart B. Reed
20
Lucile H. Thomee
35
William W. Stifler
10
E. Herbert Burk
25
Edward F. Bridgman
35
350
*15 In 1967, petitioner and several other shareholders (the sellers), Electromech, and Joseph M. Cvengros entered into an agreement which, inter alia, gave Cvengros an option to purchase the sellers' stock, or to cause the sellers to purchase his stock, in Electromech. The parties to the agreement amended it on November 10, 1972, and again on October 16, 1973. The agreement, as amended, provided in relevant part. [2]
1. Each of the [sellers] hereby agree [sic], severally and not jointly, to sell to Cvengros or his designees, the Common Shares of [Electromech] owned by such [seller] * * * at a purchase price of $3300 per share, or an aggregate of 245 common shares of [Electromech], $100 par value, * * * at an aggregate sales price of $808,500. 2. Until the close of business on November 27, 1973, Cvengros shall have the right, but not the obligation, to purchase all, but not less than all of the [sellers'] Shares at a purchase price of $3300 per share. * * * 11. Closing * * * [s]hall take place * * * on December 27, 1973 * * *. At the Closing, the following action *16 shall be taken and shall be deemed to have occurred simultaneously: A. The common shares of [Electromech] to be delivered * * * shall be delivered free and clear of all liens, charges and encumbrances in duly transferable form, that is, together with executed stock powers, signatures guaranteed. B. The aggregate purchase price * * * shall be delivered to the person or persons who are selling their shares of [Electromech] by cashiers or certified check. On November 23, 1973, Cvengros exercised his option to purchase the Electromech stock. Petitioner and some of the other selling shareholders were worried about the tax implications of a sale in 1973. Petitioner wished to defer the closing until 1974 so that he would have time to make an orderly sale of certain securities the loss from which he desired to write-off against the gain from the Electromech sale. Cvengros's financial backer, however, insisted on closing in 1973. In an attempt to accommodate all involved, on December 27, 1973, prior to the closing of the Electromech sale, Reed (acting on behalf of himself and the other sellers) and Cvengros executed written escrow instructions instructing the American National *17 Bank and Trust Company of Chicago (the escrowee) to make disbursements of the aggregate sales proceeds to the selling shareholders as follows: Selling
Number of
Total Amount
Shareholder
Shares Sold
to be Paid
Payment Date
John E. Reed
80
$264,000
1/ 3/74
John E. Reed, Trustee
20
66,000
1/ 3/74
Elizabeth C. Reed
20
66,000
1/ 3/74
Stewart B. Reed
20
66,000
1/ 3/74
Lucile H. Thomee
10
33,000
12/27/73
Lucile H. Thomee
25
82,500
1/ 3/74
William W. Stifler
10
33,000
1/ 3/74
E. Herbert Burk
25
82,500
12/27/73
Edward F. Bridgman
35
115,500
1/ 3/74
Total
245
$808,500
The escrowee was instructed that the sale proceeds remaining after the payments on December 27, 1973, were to be deposited in escrow until January 3, 1974.The escrow agreement and instructions provided for no conditions precedent to the January 3, 1974, payments other than the passage of time. At the time of closing on December 23, 1973, the following events occurred simultaneously: (1) Dairyland Insurance Company loaned and delivered to Cvengros a cashier's check in the amount of $808,500 (the purchase price of the Electromech stock) payable to the order *18 of Cvengros; (2) The selling shareholders delivered their stock in Electromech to Cvengros; and (3) Cvengros endorsed and delivered the $808,500 check to the escrowee. The escrowee subsequently disbursed the sales proceeds pursuant to the terms of the escrow instructions. Petitioner, therefore, did not receive his share of the sales proceeds ($264,000) from the escrow account until January 3, 1974. Petitioner realized a long-term capital gain of $256,000 on the sale of his Electromech stock. He reported the gain on his 1974 Federal income tax return. OPINION Respondent argues that petitioner is taxable in 1973 rather than 1974 on the gain from the sale of his Electromech stock. He contends: (1) petitioner constructively received the income from the sale of his stock in 1973; (2) petitioner received an economic benefit (or cash equivalent) in 1973; and (3) the escrow arrangement should be disregarded because it lacked economic reality. Petitioner, on the other hand, disagrees with respondent's contentions and argues that the gain is taxable to him in 1974.
Petitioner is correct that *19 ordinarily a cash basis taxpayer can effectively postpone recognition of income through the use of a bona fide agreement providing for deferred payment. See, e.g., , on appeal (5th Cir. Sept. 14, 1981); , affd. ; . This is true even if the taxpayer's objective in entering into the contract is to minimize taxes. . Moreover, an existing agreement which has been modified to provide for deferred payment of amounts not yet due generally will also be effective to postpone recognition of income. See, e.g., and cases cited therein. Nevertheless, when, upon receipt of the goods, the buyer deposits the full purchase price in an escrow account to be paid to the seller at a later date and no condition other than the passage of time is placed on the seller's right to receive the escrow funds, courts have held that the seller recognizes income when the *20 buyer deposits the funds with the escrowee. See, e.g., ; ; ; ; , affd. . [3] As we said in Kuehner:
The taxpayer could at any time have disposed of the interest [he] had in the fund in the hands of the [escrowee] * * * and no evidence has been introduced to show it was not worth the full [sales price]. * * * We conclude [that petitioner] received the equivalent of the full [sales price] * * * when the buyer deposited that amount for [petitioner's] *21 benefit with the [escrowee] and that [he] should be taxed on [his] capital gain in that year. * * * [.] Accordingly, petitioner is taxable on the gain from his Electromech stock in 1973. Petitioner relies on several cases for the proposition that a cash basis taxpayer does not recognize income when funds are deposited with an escrowee for the taxpayer's account. The cases relied on by petitioner are inapposite insofar as the taxpayers' receipt of the funds were subject to conditions other than the mere passage of time. For example, in , the shares of stock and the checks in payment thereof were to be held by the escrowee "until all the transactions covered by the contract had been completed." . We noted that there was no ground for concluding that all the conditions imposed by the contract had been satisfied prior to the seller's receipt of the escrow funds on January 2, 1926. . Here, unlike in Depew (see ), there was nothing that could have prevented petitioner's receipt of the funds *22 once they were deposited with the escrowee. Similarly, we are not persuaded that, as urged by petitioner, , requires a contrary result here. In Johnston, the amount deposited with the escrowee in 1942 was less than the taxpayer's basis in his stock. Accordingly, taking into account only the escrow funds, the taxpayer realized no gain in 1942. . As to that part of the purchase price which in 1942 had not been deposited with the escrowee and was still due from the buyer, we held that a cash basis taxpayer does not recognize income based on an unsecured promise to pay at a later date. . "Cases in which there was not merely a simple contract, but some property * * * or other security * * * are * * * distinguishable" from . [4]
*23 Accordingly, Decision will be entered for the respondent.
Footnotes
1. All references to petitioner will be to John E. Reed.↩
2. All references to the agreement will be to the agreement as amended on October 16, 1973.↩
3. In the instant case the escrow agreement made no provision for the payment of interest from December 27, 1973, to January 3, 1974, to either petitioner or Evengros. Contrary to petitioner's assertions, the fact that petitioner did not receive interest on the escrowed funds is not fatal to respondent's case. See .↩
4. Petitioner has called our attention to , wherein the Fifth Circuit reversed the district court's grant of a judgment n.o.v. We think the court in Busby↩ was concerned merely with the degree of evidence necessary to support a jury verdict and is thus distinguishable from the issue facing us here.